Good morning. We have four appeals to hear this morning, counsel. We're familiar with your cases. We've read your briefs. We've already cited in your briefs. We've looked at the record. So you don't have a lot of time, 15 minutes per side. Please get straight to the heart of your argument. We're probably going to have some questions. But be mindful of the traffic lights. And when the red light shines, it is time to stop. If you're answering a question from us, of course, you can finish your answer. You'll be on our time. So if you've got rebuttal time, you won't lose it by answering our questions. But be mindful of the time. We're going to begin this morning with United States v. Ervin. Ms. Lennon? Ms. Lennon May it please the Court, my name is Valerie Lennon and I represent Appellant Kristopher Ervin. He's also known as Justin Ervin and he is seated behind me. From the outset, I do need to concede that the sentencing issue is no longer before the Court. It was disposed of by the United States Supreme Court in the Curtis Brown case, which also came from this Court as well. Also, in my duty of candor to this Court, the government filed a notice of supplemental authority last week for the Sixth Circuit case of United States v. Bridges. There was a virtually identical case from the Tenth Circuit late last week in United States v. Morgan. Both of those cases involved a Glock handgun that had been modified with an auto sear so that the Glock would fire more than one round with a single pull of the trigger. So in my limited time here, I want to make sure that the Court understands the spectrum of what we are talking about here in this case. On one hand over here, we have Bridges and Morgan that have a fully operational Glock handgun that with one pull of that trigger could have fired more than one round on those officers. Fully operational. In this case, we have the functional equivalent of an Apple titanium credit card, which is what I'm holding in my hand here. It's within a millimeter of the same dimensions as the one-in-one auto key card, two-in-one auto key card, and substantially the same composition. So to go from here, from the auto key card, to those Glock handguns or to a machine gun AR-15 modified on this side, here's what had to be done. Here's what Agent Toye testified. I think we know what the object looked like. I've got a photo of it. We've looked at the picture. It's really not that card you held up, though, because as we all know, there are etchings on here. This is metal. So I don't think we really have any doubt about what the object looks like here. Sure. So still, to go from that object, that metal business card, metal credit card, auto key card couldn't be inserted directly into an AR-15 to make it fire more than one round with a single pull of the trigger. Does it constitute a combination of parts designed and intended for use for converting a weapon into a machine gun? No, Your Honor. Well, of course, the jury thought otherwise. Your Honor, that was a question of vagueness that needed to be decided by the district court. Questions of law have to be decided by the district court. Questions of fact can be decided by the jury. So is this about your argument about the jury instructions? No, Your Honor. In Mr. Irwin's brief, the first argument was vagueness. I'm not sure which one that was in Mr. Hoover's argument. One of my confusions about that is there's an argument that . . . On the one hand, there's the argument that the terms of the statute were clear and it clearly doesn't cover your client's conduct, which would suggest to me not vague. But then there's an argument about vagueness and a suggestion that because it's vague, we would apply the rule of lenity. Well, the rule of lenity is not something that comes into play for vagueness. The rule of lenity comes into play when there's ambiguity. The argument, as I understand that you've made, is that it's not ambiguous. You understand the difference between ambiguity and vagueness? I'm having a hard time following this argument. So vagueness is the argument that was before the district court. If I inserted ambiguity into the initial brief, then I misspoke. A rule of lenity then would have nothing to do with it. Correct, Your Honor. And to be clear, we are not asking this court to rewrite the statute. We are asking this court to enforce the statute as it is written, which . . . Well, then that would suggest that it's unambiguous. The statute does not include precursors to parts and it does not include raw materials, which is what we have here. This card is, at best, a precursor to parts, not a combination of parts that can be . . . We can't even use a screwdriver to pop these parts out and put them directly into an AR-15 to make it fire with a single . . . What about all of the evidence the government introduced showing that not only did your clients understand that the combination could result in a machine gun, but videos that suggest that they were acknowledging to potential customers the other use of those materials or parts? Your Honor, my time has expired. You can answer that. So I believe the video that Your Honor is referencing is the one of Mr. Hoover talking about how the parts worked, if I understand the question correctly. And in that video, Mr. Hoover was simply having a First Amendment discussion about his Second Amendment rights. He did not instruct them about all of the extras that had to go into how to cut that out, the specialized knowledge about how to hand-fit it, that the one that he was referencing, the actual auto key card part, was not specific to any actual long rifle. The government's own experts testified that this was a generalized drawing. What is the First Amendment message here? The First Amendment . . . See, the problem I'm having with that is the First Amendment doesn't protect speech that is about a crime. But if there's no crime, then it's still free speech. That's a different question, but that just brings us back to that, not to the First Amendment. Your Honor, I am way past my time. I have one question for you. In a different context, in Bondi v. Vanderstock, and that was dealing with the challenge to an ATF rule, so a different context. But the Supreme Court noted that a weapons kit was still a gun, even though a little work is required to complete them. Does that language work against your client here? So when we're talking about a little work, a little work, we're not talking about specialized knowledge, 53 minutes with a Dremel tool, belt-sanding, grinding wheel, drill press, hand file, and then asserting a machine gun bolt from the 1980s to make it work. That's the spectrum of modifications, machining, manufacturing, and fabrication that had to happen in order to convert this metal card into a machine gun combination of parts to fire with more than one, with a single pull of the trigger. If there are no further questions . . . You've saved, for one, you haven't saved any time, Ms. Lennon. Thank you. Let's hear from your co-counsel, Mr. Hoover. LaRosieri? How do you pronounce your name? LaRosieri, Your Honor. I apologize. You don't have to apologize. I apologize. I always apologize for being French. Fair enough. May it please the Court. I'm Matthew LaRosieri for Appellant Matthew Raymond Hoover. At base, we have to take a step back and remember that this prosecution is built on a proposition so extraordinary that it should give this court pause, and that's the idea that a drawing is a machine gun. At base, and I'd like to touch on Vanderstock, and I'd like to touch on those other cases as well, but we have . . . It's more than a drawing. It's a drawing. When you say drawing, I picture a piece of paper with a drawing on it. This is a metal part. It's a metal card that can be used if it is cut out, and it has not just a drawing on it. It has an etching, and in some of the cases you could pay for this card, you could pay more to have the more complicated part, the interior circle, cut out in advance. So it's more than a drawing, right? Your Honor, no. It is not more than a drawing, and in fact, it's undisputed that these cards were homogenous, singular pieces of stainless steel. It's also undisputed that the drawing was so light that it could not catch a fingernail. This isn't the same as the government put in their response brief a puzzle that you can pop out with your thumbs. Not at all. This is a homogenous piece of steel, and the canvas doesn't change its composition. I think Judge Branch's point was it's not a drawing on a piece of paper. It is on stainless steel, right? Yes, Your Honor. It's not just a drawing. It's an etching on stainless steel that's true to scale for what would be required for a converter for a machine gun. It's not feet longer than that. It's the size, the right kind of material, and true to scale etching, right? No, Your Honor. Respectfully, it's undisputed also that it is not true to scale. In fact, it is undisputed that Mr. Toy, the government's expert that much of this case is built on, only built a device, which he admitted did not function the way he expected it to, by cutting outside the lines. And so if we are to understand that the lines transform this canvas, this piece of material, into something else, I don't understand how we can go from the lines somehow turning a homogenous piece of steel into a combination of parts, to then also saying, well, the lines don't really matter that much. He just went outside the lines a little. That's absurd. It's Kafkaesque to suggest that this drawing is a machine gun. It's not even a part. It's undisputed, homogenous. And again, we're not asking this court to rewrite the statute. You can see it in the government, sorry, you can see it in the lower court. So this all goes, you say, because of that argument, there's insufficient evidence. This is not a sufficiency of the evidence question, but this is a sufficiency of the indictment question, where the indictment said that this is a singular piece of steel, and then it was indicted as a combination of parts. That's the government's case when motion for judgment of acquittal was made. The lower court recognized the homogeneity of the steel, and the lower court recognized that it had to be materially altered to become whatever it is that Cody Toy tested. The statute simply doesn't cover that. And insofar as Vanderstock goes, that was, again, a question of facial, a facial challenge to a very different from a first impression criminal prosecution against an individual who was, in the case of my client, talking about a drawing, was advertising this drawing. Okay, well, let's say we don't agree with you that this is just a drawing based on what Judge Branch has already stated. I'm more interested in the combination of parts piece, because your counsel talked about a spectrum, as well as all of the steps that are required to result in a machine gun. And my question is, how many steps are too many steps in your estimation to not qualify as a combination of parts? I mean, one, two, three, that seems, and then a machine gun. Where's the line that you're supposing? Because the statute does mean something, and it does target some conduct, even though you're claiming not your clients. Absolutely, Your Honor. And the statute has six or seven different definitions of machine gun. The government chose to proceed under this one, requiring a combination of parts. When you're going to use that specific section, and you have a single homogenous component, I think wherever that line is to be drawn, it's beyond homogeneity. It is where they're, respectfully, Your Honor, I think it shouldn't be too controversial to say that a combination of parts, plural, should have some independent components within it, should have something that's mechanically separable. The statute doesn't say designed to become a combination of parts. The statute doesn't say something that contains parts that can be accessed through material alteration. It says a combination of parts designed and intended. But to Judge Abudu's question, where is the line? You wouldn't be here if what facts were present. Presumably, you pointed to the government in its briefing had the puzzle pieces that popped out. Presumably, you wouldn't be here arguing today if the card had, the etching was so deep that somebody could just pop the pieces out, correct? Yes, Your Honor, I see what you're saying, and I agree. If the parts are distinct from the whole, as is the case in the government's puzzle analogy, it would be a much more difficult argument to say that they were not a combination of parts. So at some point, the etching becomes deep enough that it takes away your argument that this is a single part, right? Certainly, but wherever that point is, it's beyond the point a fingernail can start to catch it. Yeah, but isn't that then wrapped up with a factual inquiry, effectively, about whether that combination is designed or intended for use in converting a weapon into a machine gun, all of which was then put to the jury and the jury made a finding? Your Honor, there are combined questions of law and fact, but no reasonable jury properly instructed. And again, because the government insisted on proceeding with the combination of parts theory, the fact that the court refused to instruct the single part and not a combination of parts that they must acquit, that compounded the issues here. Your Honor, I'm about to run out of time. May I say one more sentence? I would just like to point out that the government makes much of his case talking about state of mind, and I know, Your Honor, Abudu made that question. Even a mountain of mens rea evidence does not excuse the government from proving a chargeable actus reus. And for that to be the case, there must have been a combination of parts. Thank you. I think we understand. You've saved three minutes for Roberto. Let's hear from the government. Good morning, Your Honors. May it please the court. Sean Siakinen for the United States. What I've just heard right now is a little different than, well, much different than the evidence that was presented at trial. I'd like to respond to some of the points that come up. And the first point that I want to make is that one reason that the jury reasonably found that the auto key card was a machine gun, was designed and intended to be a machine gun conversion device, including a combination of parts, is that that is what Hoover and Ervin told everyone. And in particular, Mr. Hoover told his viewers that the auto key card was a lightning link, which is the machine gun conversion device in question. He told his viewers that it would let them, quote, make a machine gun, quote, experience full auto and, quote, scratch their full auto itch. Then he explained step by step how to cut out each separate discrete piece, insert the two pieces into each other to form that bracket, which is what the lightning link is, and how to fit that assembled device over the bolt carrier in a weapon to generate automatic fire. What about the size? Was it true to scale? Well, at a minimum, that was disputed. It certainly wasn't undisputed, as I just heard right now. And what the testimony showed was that the ATF agent who cut out and assembled these devices in 40 minutes or less had to trim or file less than a millimeter off of one edge in order to fit it into one particular weapon that he tested the device with. And the reason for that is that there are tolerances involved. And each different rifle has different tolerances. And in order to fit it into that particular weapon, yes, he had to slightly file it down a bit. Perhaps he would not have had to do that if he had been using a different weapon. But another point that I would like to make on this is that the statute does not require functionality. A machine gun conversion device is the file has to be as designed or intended use. Exactly. And so when you look at all of the evidence in the record, I don't think that the district court or the jury could have or should have looked at this device in a vacuum. I think that they reasonably and appropriately considered all of the evidence, which included Mr. Hoover's own words to his viewers, to his customers, Mr. Urban's own words, all of the evidence. And when you look at the full context of these devices, including the materials, the devices, design and intent was overwhelming. Can I ask you, as I asked opposing counsel, where is the line if we have a metal card, for example, that somebody just took a sharpie and drew true to scale these designs? Are we having this prosecution today? Is that a combination of parts? I think if you if you just had the card with drawings on it without all of the other evidence, including the instructions, the demonstrations, then it would certainly be a more difficult case. And I think that is why this is a question for the jury to decide. I'd also think that Vanderstock is helpful on this. As you mentioned, Your Honor, the Supreme Court recognized in Vanderstock that unfinished unfinished component part kits can be weapons under a different statute. And one of the reasons that the Supreme Court held that is that artifact nouns such as weapon or in this case, part are are commonly understood to include their their intended use. And therefore, an unfinished, incomplete version of an artifact noun could can would usually be understood to satisfy the definition in the way that an unfinished table from Ikea, when unfinished novel are understood to be a table and a novel, no different with weapons or parts, I don't think. So to your point about Vanderstock, Vanderstock does mention that a novice was able to do some work and make that into a machine gun. Here, I'm sure you would concede the work, the metal work that was involved exceeds what a novice would be able to do. I'm not sure I would concede that because the ATF agent testified that he had no metalworking experience. So the ATF agent certainly was not a novice with respect to firearms, perhaps. But I don't know that as to the skill of cutting this metal to create the lightning link, he was a novice. Exactly. And the record also shows that the tool that he used was a commonly available Dremel that you know, anyone can get from any hard store hardware store. So I don't think it's fair to say that the ATF agent who cut this device out had any extraordinary or expert experience or knowledge in metalworking and how to cut the device out. And again, I don't know that that matters because functionality is not an element of this offense. All that matters is whether these devices were designed and intended to create automatic fire. Yeah, I used this adjunctive earlier, but it's and intended. Yes, exactly. What about the number of steps from the card to actual functionality, even though that's not required or conversion to a machine gun? How many steps are too many steps to make it a combination of parts for purposes of that outcome? I think that's a fair question. And I think that's a fair factor that that juries should consider in deciding whether this element is met in a particular case. In this case, the steps were simply cutting these two parts out, inserting one into the other, and it was your answer that that's really a factual inquiry. It's reserved to a jury, not a legal inquiry. Absolutely. And both you and the other side mentioned the amount of time it took to construct this firearm. Does that matter? How much time would it take? If it takes a real novice five hours, does that matter in terms of its intended use? Again, I would say it's not this positive, but it certainly could matter to the fact finder, which I think should be the jury in this case where we're dealing with an element of a criminal offense specified in statute to be proven beyond reasonable doubt to the fact finder. I think all those things. But the facts could be such that at some point a court could determine that no reasonable juror could find, as a matter of fact, that it was designed and intended. Certainly, based on the evidence presented and that determination would have to be made on all of the evidence as the district court rule in this case and denying the defendant's Rule 29 motion. But to respond briefly to a few of the points that came up earlier, Mr. Irvin's counsel said that this device was basically a credit card and I would just point out that if they had engraved two scale functional component parts on a credit card and instructed their viewers and customers how to cut them out, how to insert them into a semi-automatic weapon and told them, as Mr. Hoover did, that this is a machine gun and a machine gun conversion device, then it would be no different. I think that would also meet the statutory definition or at a minimum a jury reasonably could have so found. On the vagueness point, the Fifth Circuit decision Campbell cited in our brief, I believe, decides this and is binding authority on that point, the statute. This provision has been held not to be unconstitutionally vague. Mr. Irvin's counsel conceded that the rule of lenity has no bearing here. We would agree with that. On Mr. Hoover's videos, I would say that they not only suggested that this device could be used as a machine gun conversion device, they went several steps forward and he explicitly told his viewers, this is the machine gun. The main benefit of this of this device is you cut these parts out, you create your lightning link, you drop it in, you take it out and nobody has to know about it and the only machine gun is this part right here pointing to the lightning link. And he told his viewers that if you do this you'll be a felon, so don't tell anyone about it, don't record yourself doing it. I think the evidence was there's more than sufficient evidence from which a jury reasonably could have concluded that these devices were a combination of parts designed and intended as machine gun conversion device. I still have a few more minutes. I just have... You don't always have to use it, you know. One last point, what we did already talk about, we already talked about that, um, is the last point I would make is that the auto key card is clearly more than just a drawing. Defendants did not manufacture this on cardboard, on paper, or on thin plastic. They manufactured it on a strong and durable durable material that would work that the ATF tested and proved to work and that evidence was before the jury, so I don't think it's fair to characterize this as just a first instance. In the alternative, they argue I think that the statute itself violates the second amendment. What is your response to that beyond just a citation to Bruin and Heller in those cases? In addition to Bruin and Heller, the supplemental authority letters that we submitted pointing to decisions from other circuits recently decide, recently holding that the of the government restricting machine guns or machine gun conversion devices because those are dangerous and unusual weapons. And then I think their argument is that that language is outdated. Well, the sixth and the tenth circuit cases that we cited in our 28J were issued within the last couple of weeks. I don't think the language is outdated. There are the appellate courts that have looked at this issue recently have uniformly concluded, to the best of my knowledge, that machine guns, including conversion devices, when courts have addressed them, are dangerous and unusual weapons and therefore beyond the scope of the second amendment. And I'm not aware of any appellate court decision going the other way. Thank you. We understand your case. Thank you, Your Honor. May it please the court. Matthew Orozier for Matthew Raymond Hoover. I would just like to touch on this again as to Toye's inexperience. The record shows Toye was a Marine Corps armorer. So to the extent that they're contending that this could have been done by any particular person, that evidence just isn't before us. But the real question here is one of law. Something's status as a machine gun, at the end of the day, is a matter of law. And by the time the court denied the motion for judgment of acquittal before it, again, the court even in its order contemplated that it was a homogenous component, uniform, single, that it had to be materially altered. At that point, the motion for judgment acquittal should have been granted. They charged a combination of parts. There's other parts of the statute that don't require that. They could have charged it in the alternative. They didn't. And just as we, and I get to quickly point out, Hoover does not cede lenity. The question of ambiguity here is that we think that the statute very clearly does not cover a homogenous piece of steel with a draw. Lenity has nothing to do with vagueness. Ambiguity. Okay. Which is it? It's an argument about, is your argument that the statute's ambiguous or is it vague? Your Honor, I understand. The argument is that if this section covers whatever the auto key card is, then it's incredibly ambiguous as to that and needs to be construed narrowly to avoid the absurd result that we have in front of us that somebody in a first instance type of criminal. So for it to be ambiguous, there has to be more than one plausible interpretation. Yes, Your Honor. And if we're going to employ the rule of lenity after using all the other canons of interpretation, if ambiguity persists, we have to choose the plausible interpretation that favors the defendant. What is the plausible interpretation you're talking about? As opposed to a vagueness argument where we can't know whether we're on one side of the line or another of illegality. That's a different argument. Yes, I understand, Your Honor. And again, many of our arguments were brought in the alternative. Again, we assert that the statute is clear and that something that is homogenous can't break. However, if the court- Which case, no rule of lenity. However, if the court finds otherwise, if the court finds that a combination of parts could, as the lower courts said, contemplate something that could become a combination of parts, then there must have been a competing interpretation. And thus, the statute is- That must have been as what? That there must have been that interpretation. Well, what is that plausible interpretation? This is exactly why it was brought in the alternative. And the way it was stated was that if the court finds- I mean, it's a confusing thing to follow when you argue that it's unambiguous. But if not, it's ambiguous rule of lenity. If not, it's vague. I'm not exactly sure, though, what the argument is once you get past your argument that it's just unambiguous. Your Honor, I see I've run out of time. You can answer that. Your Honor, I do think it's clear from the record and from the briefing that the way this is brought. If it is not clear, if the court finds another plausible reading, well, then it is ambiguous. Okay. I think we understand your case. Ms. Lennon, I note your court appointed. We thank you for accepting the appointment. We're going to move on to the second-